UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARRELL MATHEW BARTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4: 22 CV 681 PLC |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This action is before the Court for review of the final decision of the defendant Acting Commissioner of Social Security denying the application of plaintiff Darrell Mathew Barton for Disability Insurance Benefits (DIB) under Title II of the Act. For the reasons set forth below, the Court affirms the Commissioner's decision.

**I.  Background and Procedural History**

Plaintiff was born on April 28, 1969 and was 50 years old on his alleged disability onset date. (Tr. 21)  He filed his application for DIB on June 18, 2019, alleging a disability onset date of April 20, 2019 due to degenerative disc disease, disc protrusion, bulge of the neck, and sciatica. (Tr.55-56, 141-142) The Social Security Administration (SSA) denied Plaintiff's claim, and he requested a hearing before an administrative law judge (ALJ).  (Tr. 64-68, 73-74)    The SSA granted Plaintiff's request for review and conducted a hearing on October 16, 2020. (Tr.  76-90, 33-54)

On August 27, 2021, the ALJ issued a decision and concluded Plaintiff was not disabled under the Act.  (Tr. 11-24)  The Appeals Council denied review.  (Tr. 1-7)  Plaintiff has exhausted

all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## II.    Administrative Record

The Court adopts Plaintiff's Statement of Material Facts (ECF No. 10-1), along with Defendant's Response (Doc. 11-1). These facts, taken together, present a fair and accurate summary of the record evidence and testimony at the administrative hearing. The Court will discuss specific facts in detail where relevant to this appeal.

## III.    Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 404.1505(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520(a). Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity. Id. Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a), (c). "The sequential evaluation process may be terminated at step two only when

the claimant's impairment or combination of impairments would have no more than a minimal impact on [the claimant's] ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)). At step three, the ALJ considers whether the Plaintiff's impairment meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a), (d). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d).

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); 20 C.F.R. §§ 404.1520(a), (e). RFC is "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." Id. (quoting Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a), (f); see McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. McCoy, 648 F.3d at 611.

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 404.1520(a), (g);

404.1560 (c); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled. 20 C.F.R. §§ 404.1520(g).

### IV.    ALJ's Decision

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity since April 20, 2019, the amended alleged onset date; and (2) had the severe impairments of multilevel degenerative disc disease, history of right clavicle repair, and left knee dysfunction. (Tr. 13-14) The ALJ concluded Plaintiff had the non-severe impairments of obesity, hypothyroidism, hypertension, hypercholesteremia, bipolar disorder, and anxiety disorder. (Tr. 14) The ALJ also found that Plaintiff's left clavicle pain, which began in June 2020 and for which Plaintiff received no follow-up treatment, did not meet the durational requirement. (Tr. 14) At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, Subpart P, Appendix 1. (Tr. 16.)

The ALJ determined that plaintiff had the RFC to perform "light" work as defined under the regulations with the following limitations:

> The claimant can lift 50 pounds occasionally and 20 pounds frequently, as well as carry 20 pounds occasionally and 10 pounds frequently. The claimant can occasionally push and pull within these limits. The claimant can sit for a total of 6 hours in an 8-hour workday. The claimant can stand for 30 minutes at a time, for up to 4 hours in an 8-hour workday, and walk for 15 minutes at a time, for up to 2 hours in an 8-hour workday with normal breaks. The claimant can occasionally operate foot controls with his right foot and frequently operate foot controls with his left foot. The claimant can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. The claimant can occasionally stoop, kneel, and crouch, but should never crawl. The claimant can occasionally reach overhead and frequently reach in all other directions, as well as handle bilaterally. The claimant can tolerate occasional exposure to extreme cold, vibrations, and moving mechanical parts. The claimant must avoid unprotected heights.

(Tr. 17)  Based on the vocational expert's testimony, the ALJ concluded Plaintiff was unable to perform any past relevant work. (Tr. 20)  However, based on the RFC, Plaintiff's age, education, and prior work experience, and the vocational expert's testimony, the ALJ found Plaintiff was able to perform other jobs that existed in significant numbers in the national economy, such as routing clerk, mail clerk, and folding machine operator. (Tr. 21) The ALJ therefore concluded Plaintiff was not disabled. (Tr. 23)

V.     Discussion

Plaintiff argues that the ALJ erred in evaluating the medical opinion of Deborah Brachman, P.H.N., R.N., M.S.N., F.N.P.-B.C., and Shehryar Malik, D.O. [ECF No. 10] Specifically, Plaintiff contends the ALJ failed to follow the requirements of SSA's regulations for evaluating the persuasiveness of medical opinion evidence. [ECF No. 10] Plaintiff further argues the ALJ erred at step five in failing to resolve inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT).

The Commission responds that the ALJ properly evaluated Nurse Brachman's and Dr. Malik's opinions in compliance with the regulations. [ECF No. 11]   The Commissioner further asserts the ALJ fulfilled his obligation under step five by inquiring of the vocational expert whether there were conflicts between her testimony and the DOT and by resolving the alleged conflicts in his determination. [ECF No. 11]

A.  Standard of Judicial Review

In reviewing the Commissioner's denial of an application for disability insurance benefits, the Court determines whether the decision complies with the relevant legal requirements and is supported by substantial evidence in the record. See 42 U.S.C. 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009).  Substantial evidence

is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial evidence supports a contrary outcome." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

B. Opinion Evidence

Plaintiff argues the ALJ erred in evaluating the medical opinions of Nurse Brachman, and Dr. Malik by failing to follow SSA regulations for evaluating the persuasiveness of medical opinion evidence. [ECF No. 10] Specifically, with respect to Nurse Brachman's opinion, Plaintiff contends the ALJ failed to adequately consider the supportability of the opinion because, as the ALJ acknowledged, Nurse Brachman supported her opinion with objective evidence from the record. [ECF No. 10] Plaintiff also contends the ALJ's finding that Brachman's opinion was not consistent with the record as a whole, was contrary to the ALJ's finding that Brachman's opinion appeared to be supported by her review of the record. Plaintiff further asserts the ALJ's rejection

of Brachman's opinion on the basis that she was a non-examining source was in violation of the regulations concerning opinion evidence. [ECF No. 10]

Plaintiff also contends the ALJ erred in evaluating Dr. Malik's opinion because the ALJ failed to explain his consideration of the supportability factor, and failed to reconcile his partial rejection of the opinion with the evidence that supported the opinion. [ECF No. 10] Plaintiff further asserts the ALJ erred in his consideration of the consistency factor because the ALJ picks and chooses from the record to support his conclusion.

Plaintiff applied for benefits after March 27, 2017, and therefore the ALJ applied the new set of regulations for evaluating medical evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). The revised regulations redefine how evidence is categorized, including "medical opinion" and "other medical evidence," and how an ALJ will consider these categories of evidence in determining the RFC. See 20 C.F.R. §§ 404.1513(a), 404.1520c.

The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c (a), 416.920c (a). Rather, the ALJ considers all medical opinions according to several enumerated factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes the length of treatment relationship, the frequency of examinations, the purpose of the treatment, the extent of treatment, and the examining relationship; (4) the medical source's specialization; and (5) other relevant factors such as the medical source's familiarity with the other evidence and the source's

understanding of the SSA's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c (a), (c); 416.920c (a), (c).

The ALJ must articulate the persuasiveness of the medical opinions and prior administrative medical findings in the case record. 20 C.F.R. §§ 404.1520c (b), 416.920c (b). The most important factors are supportability and consistency, and the ALJ must explain how these factors relate to each medical source's medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c (a), (b)(2); 416.920c (a), (b)(2). Dornbach v. Saul, 4:20-CV-36 RLW, 2021 WL 1123573, at *4 (E.D. Mo. Mar. 24, 2021); Bradley v. Kijakazi, 1:22-CV-19-SNLJ, 2022 WL 4482407, at *4 (E.D. Mo. Sept. 27, 2022); Martini v. Kijakazi, 4:20-CV-1711-CDP, 2022 WL 705528, at * 4 (E.D. Mo. Mar. 9, 2022). Generally, the ALJ is not required to explain his consideration of the remaining factors.[1] 20 C.F.R. §§ 404.1520c (b)(2); 416.920c (b)(c); Martini, 2022 WL 705528, at * 4.

Under the new regulations, a "medical opinion" is a statement from a medical source about an individual's capabilities despite her impairments and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work. 20 C.F.R. § 404.1513(a)(2). A medical opinion does not include judgments about the nature and severity of an individual's impairments, medical history, clinical findings, diagnosis, response to prescribed treatment, or prognosis. 20 C.F.R. § 404.1513(a)(3).

1. Nurse Brachman's Opinion

---

[1] The ALJ must articulate his consideration of the remaining factors when two or more medical opinions or prior administrative medical findings about the same issue are not exactly the same and both opinions are equally well supported and consistent with the record. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c (b)(2).

On October 6, 2020, after reviewing Plaintiff's medical records, medical consultant and public health nurse Deborah Brachman rendered an opinion regarding Plaintiff's physical impairments. (Tr. 483-85.) Brachman concluded Plaintiff suffered from chronic neck, lower back, and right shoulder pain with degenerative joint disease of the right acromioclavicular (AC) joint; left shoulder pain; numbness of the bilateral arms; chronic left knee pain; and thoracic degenerative spurring and spondylosis with wedging of T8 which limits his ability to walk, stand, kneel, bend, squat, stoop, climb, crouch, reach, lift and carry. She opined that Plaintiff was limited to sustaining sedentary work at most. (Tr. 483-84)

Brachman asserted that her opinion was consistent with Plaintiff's diagnostic imaging, including the following: CT spine results showing cervical spondylosis, intact C5-C7 cervical fusion with anterior plate and screw placement; and CT chest results on June 1, 2020 which revealed minimal anterior wedging of T8 which appeared to be old, lumbar fusion, thoracic spondylosis or degeneration, and dependent atelectasis. She noted Plaintiff reported chronic neck pain and back pain that limited his ability to walk, stand, sit, and lift. Brachman attributed her limitations to Plaintiff's chronic left knee pain, right shoulder pain, bilateral arm numbness, as well as his reported difficulty holding things due to numbness. Brachman noted Plaintiff had tried conservative treatments, cortisone injections, and surgical repair for the neck, low back, left knee, and right shoulder but continued to report pain. Brachman also noted that her limitations were consistent with Plaintiff's multiple examinations reflecting the following: Plaintiff exhibited tenderness to palpation of the paraspinals of the cervical spine; tenderness to palpation of the lumbar spine; tenderness to palpation over the right AC joint; pain with flexion of the shoulder against resistance; tenderness to palpation to the left shoulder; persistent moderate effusion of the

left knee; and a bony deformity left clavicle with tenderness to palpation of the distal aspect. (Tr. 484)

In his decision, the ALJ concluded Brachman's opinion was "not persuasive" although it "appear[ed] to be supported by a review of the objective evidence." (Tr. 18) The ALJ explained that while there were "impairments throughout the record," Brachman had not independently examined Plaintiff or assigned "specific postural, manipulative, or environmental limitations to each impairment." (Tr. 18) The ALJ further noted that Brachman made a credibility determination of Plaintiff's allegations, which is outside her scope of review and practice. (Tr.  18)  The ALJ concluded that while Plaintiff had limitations, the record as a whole did not "suggest greater limitations consistent with sedentary work." (Tr.18.)

Plaintiff contends the ALJ erred in failing to explain how Brachman's opinion was not persuasive despite the fact that the ALJ himself found Brachman's opinion "appeared" to be supported by her own review of the record. He argues the ALJ failed to adequately explain the basis of his findings and to reconcile his treatment of the opinion with his favorable findings concerning supportability. In other words, Plaintiff argues that because the ALJ found Brachman provided support for her opinion, the ALJ should have accepted it. He further argues the ALJ erred in rejecting Brachman's opinion on the basis that Brachman was a non-examining source in violation of the new regulations concerning opinion evidence. He finally contends that in finding Brachman's opinion not consistent with the record as a whole, the ALJ created an unresolved inconsistency with his own finding that Brachman's opinion appeared to be supported by her review of the record.

The Court concludes the ALJ properly considered Brachman's opinion according to the regulations, including the two most important factors, supportability and consistency. While the

- 10 -

supportability factor, i.e., the support provided by the source issuing the opinion, weighs in Brachman's favor, the consistency factor, i.e., a comparison with other items in the record, relationship with the claimant, and other factors, including Brachman's opinion on Plaintiff's credibility, does not.

In finding Brachman's opinion not persuasive, the ALJ specifically stated that Brachman supported her opinion with a review of the medical record evidence. (Tr. 18.) However, the ALJ noted that Brachman had not independently examined Plaintiff or assigned any specific postural, manipulative, or environmental limitations to each impairment. (Tr. 19, 484.) The ALJ observed Brachman opined Plaintiff was limited to sedentary work, but her opinion was silent with respect to any other limitations. (Tr. 18, 484.) The ALJ also noted that Brachman made a determination of the consistency of Plaintiff's allegations, which was outside of her scope of review and practice. (Tr. 18, 483-85.) The ALJ concluded that while Plaintiff had limitations overall, the record as a whole did not suggest greater limitations consistent with sedentary work. (Tr. 18.) Moreover, the ALJ rejected the lifting limitations of Brachman, but accepted those of Dr. Malik, the consultative examiner, as detailed below. (Tr. 18-20.) Based on the above, the Court concludes substantial evidence supports the ALJ's decision to find Nurse Brachman's opinion not persuasive. Accordingly, this Court finds no error.

      2.   <u>Dr. Shehryar Malik's Opinion</u>

On May 8, 2021, Plaintiff underwent a consultative exam with Dr. Shehryar Malik. (Tr. 492-504) Plaintiff reported a history of neck and back problems commencing in 1992. (Tr. 492) He reported having several neck and back surgeries as well as surgery on his shoulder and left knee dating to 1986. (Tr. 492) Plaintiff's typical day consisted of "doing things around" his house and yard, watching television, and resting. (Tr. 493)

Dr. Malik's physical examination findings of Plaintiff were unremarkable with respect to his head, eyes, ears, neck, and throat, as well as his cardiovascular, respiratory, and neurological systems. (Tr. 494) Musculoskeletal examination showed that his muscle bulk and tone were within normal limits. (Tr. 494) Plaintiff had a slow, antalgic gait. (Tr. 494) He had left-side shoulder pain with a painful arc that was noted as well as stiffness at the AC joint on the right. (Tr. 494) His knees demonstrated some left-side knee pain with stiffness and crepitus noted bilaterally. (Tr. 494) Plaintiff exhibited bilateral epicondyle pain and bilateral hip pain. (Tr. 494) He had paravertebral muscle tenderness at the lumbosacral and thoracolumbar areas with pronounced stiffness. (Tr. 494) Plaintiff's hands and fingers appeared normal, and he was able to grasp and turn a doorknob, pick up and grasp a pen, write a sentence, and lift and handle personal belongings with mild difficulty. (Tr. 494). Plaintiff was able to rise from a sitting position but was unable to squat and rise and had difficulty getting up and down from the exam table. (Tr. 494) Plaintiff was unable to walk on his heels and toes, tandem walk, and he could not stand or hop on one foot bilaterally. (Tr. 494) Lasegue sign or straight leg raising was positive bilaterally with notable stiffness and crepitus with flexion, abduction, and external rotation motions being painful as well at the sacroiliac joint. (Tr. 495-96) Straight leg raising was positive bilaterally while supine. (Tr. 496) Plaintiff's lumbar spine was moderate to severely affected with range of motion with paravertebral muscle tenderness at the lumbosacral and thoracolumbar areas with pronounced stiffness noted on lateral bending. (Tr. 495-96)

Plaintiff's range of motion of his left shoulder was decreased upon internal rotation at 60 degrees and external rotations at 60 degrees. (Tr. 503) He demonstrated decreased range of motion at his bilateral elbows at all ranges. (Tr. 503) He exhibited decreased dorsiflexion, palmar flexion, radial deviation, and ulnar deviation of both hands. (Tr. 503) Plaintiff demonstrated

decreased flexion-extension of the left knee at 120 degrees. (Tr. 503) He exhibited decreased forward flexion and adduction of both hips, and decreased abduction of the left hip. (Tr. 504) He manifested decreased flexion-extension and lateral flexion on either side of the lumbar spine. (Tr. 504) He demonstrated 4/5 strength of the right lower extremity. (Tr. 504.)

In a Medical Source Statement, Dr. Malik opined Plaintiff was able to: continuously lift up to ten pounds, frequently lift up to 20 pounds, occasionally lift up to 50 pounds, and never lift more than fifty pounds. (Tr. 497) He was able to frequently carry up to ten pounds, occasionally carry 11-20 pounds, and could never carry more than 20 pounds. (Tr. 497) Plaintiff could sit for one hour a time and six hours total, stand for 30 minutes at a time and four hours total, and walk for fifteen minutes at a time and for two hours total. (Tr. 498) Plaintiff was capable of reaching in all directions and pushing/pulling occasionally and frequently handling, fingering, and feeling frequently with his left hand. (Tr. 499) He could reach in all directions, handle, finger, feel frequently and could push/pull occasionally in his right hand. (Tr. 499) Plaintiff was able to occasionally use his right foot and frequently use his left foot for foot controls. (Tr. 499) He was capable of occasionally climbing stairs and ramps, balancing, stooping, kneeling, and crouching but not crawling or climbing ladders and scaffolds. (Tr. 500). He could occasionally tolerate exposure to moving mechanical parts, operate a motor vehicle, humidity and wetness, dust, orders, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. (Tr. 501) Plaintiff should never be exposed to unprotected heights. (Tr. 501)

Plaintiff asserts the ALJ erred in evaluating Dr. Malik's opinion by failing to explain how he considered the supportability factor, and further failed to reconcile his partial rejection of Dr. Malik's opinion with the ample findings that supported her opinion. He further claims the ALJ

erred in his consideration of the consistency factor because he picks and chooses from the record to support his conclusion while ignoring other evidence.

The Court disagrees. In his decision, the ALJ explained that Dr. Malik's opinion was supported by a recent examination showing an antalgic gait with mild to moderate limitations in range of motion, and that was consistent with Plaintiff's history of multiple surgeries. (Tr. 19.) However, the ALJ found that Dr. Malik's manipulation limitations were not fully supported by the longitudinal record and he therefore modified those limitations in his RFC. (Tr. 19.) The ALJ noted Plaintiff had a history of right clavicle repair and had previously complained of pain with movement of his shoulders and arms, but he received conservative treatment for his complaints. (Tr. 19, 420-23.) The ALJ further explained that there was no record evidence of any left shoulder or left clavicle impairment before June 2020, and although Plaintiff complained of left shoulder pain following a motor vehicle accident in June 2020, imaging did not detect such an impairment. (Tr. 19, 367-76.)

The ALJ further stated that Dr. Malik's fingering and feeling limitations were not adopted based on the lack of evidence of limitations in grip or pinch strength demonstrated during the consultative examination or other treatment since the alleged onset date despite Plaintiff's complaints of difficulties holding onto things and repetitive hand usage. (Tr. 19, 41.) The ALJ also found it significant that there was no follow-up treatment for Plaintiff's alleged inability to use his hands, and his evaluation at the consultative examination did not suggest that he would be unable to perform activities within the limitations set forth in the RFC finding. (Tr. 19.) Finally, the ALJ rejected Dr. Malik's environmental limitations related to noise, humidity and wetness, extreme heat, and pulmonary irritants because the need for the limitations was not explained by

the consultative examiner and the limitations were not supported by evidence from the consultative or other examinations. (Tr. 20, 317-504.)

Based on the above, the Court concludes the ALJ adequately explained his rationale in evaluating Dr. Malik's opinion under the regulations for evaluating medical evidence. The Court concludes substantial evidence supports the ALJ's decision to find Dr. Malik's opinion persuasive in part. Accordingly, the Court finds no error.

C. Step Five Analysis

Plaintiff argues the ALJ's findings at step five, that Plaintiff was capable of performing the work of routing clerk, mail clerk, and folding machine operator, are not supported by substantial evidence because the ALJ failed to resolve the apparent inconsistency between the vocational expert's testimony and the DOT concerning Plaintiff's restriction to occasional overhead reaching of the bilateral upper extremities, in violation of Social Security Ruling (SSR) 00–4p. Here, the RFC limited Plaintiff to occasionally reaching overhead and frequently reaching in all other directions. Plaintiff notes that each of the three jobs identified by the vocational expert and relied upon by the ALJ at step five, require *frequent* reaching. Based on the idea that "frequent reaching" might require "more frequent reaching than restricted by the RFC," Plaintiff argues that there is an apparent conflict between the DOT and the vocational expert's testimony that the ALJ failed to resolve.

As an initial matter, the Court notes that DOT definitions are "simply generic job description that offer the approximate maximum requirements for each position rather than their range." Jones v. Astrue, 619 F.3d 963, 978 (8th Cir. 2010). Accordingly, not all jobs in every category have requirements identical to or as rigorous as those listed in the DOT. Wheeler v. Apfel, 224 F.3d 891, 897 (8th Cir. 2000).

Here, following the hearing, Plaintiff submitted a brief, asserting, among other things, that an apparent conflict existed on the issue of overhead reaching. The ALJ then provided a written interrogatory to the vocational expert which asked: "Are there any conflicts between the occupational evidence you have provided for question #7 and the occupational information contained in the DOT and/or the Selected Characteristics of Occupations (SCO)? (Tr. 301) In response, the vocational expert explained:

> There are no conflicts with the DOT or the SCO however neither address the restrictions pertaining to standing and walking, the differential between the use of right or left extremities, or *overhead reaching*. As such, the opinion regarding those restrictions is based up *the training, education and experience of this Vocational Specialist*.

(Tr. 307) (emphasis added). In his decision, the ALJ addressed Plaintiff's various arguments with respect to the vocational expert's testimony, and specifically with respect to SSR 00-4p, and stated that other factors not specifically discussed in the DOT, "were testified to through the vocational expert's experience of placing others in representative work." (Tr. 22.)

The ALJ's explanation was sufficient. Under SSR 00–4p, the ALJ must "ask about any possible conflict" between vocational expert evidence and "information provided in the DOT." When an ALJ has posed a hypothetical that accurately reflects his RFC finding, questioned the vocational epxert about any apparent inconsistencies with the relevant DOT job descriptions, and explained his decision to credit the vocational expert's testimony, the ALJ has complied with SSR 00-04p. Welsh v. Colvin, 765 F.3d 926, 930 (8th Cir. 2014) In this case, the ALJ did just that. The ALJ satisfied this requirement by proposing the interrogatory to the vocational expert, then in his decision, addressing Plaintiff's various arguments with respect to this testimony, and specifically with respect to SSR 00-4p and an apparent conflict, explained that other factors not specifically discussed in the DOT "were testified to through the vocational expert's experience of

placing others in representative work." (Tr. 22.)  Cf. Kemp v. Colvin, 743 F.3d 630, 633 (8th Cir. 2014) (remanding denial of benefits where the record did not reflect whether the vocational expert or the ALJ even recognized the possible conflict between the hypothetical and the recommended job).  See also Moore v. Colvin, 769 F.3d 987, 989-90 (8th Cir. 2014)(vocational expert must offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may accept as reasonable after evaluation).

**VI.    Conclusion**

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports Defendant's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of Defendant denying Social Security benefits to Plaintiff is **AFFIRMED**.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of June, 2023